IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**TRAVELERS PROPERTY
CASUALTY CO OF AMERICA,**

      **Plaintiff,**    **IN ADMIRALTY**
v.    **CASE NO. 5:13-cv-00176-RS-CJK**

**INLAND CONSTRUCTION &
EQUIPMENT, INC.,**

      **Defendant.**
_____/

## ORDER

Before me are Plaintiff's Motion for Summary Judgment and Supporting Memorandum of Law (Doc. 61), Inland Construction & Engineering, Inc.'s Memorandum in Opposition (Doc. 65), and Plaintiff's Reply in Support of Motion for Summary Judgment (Doc. 75).

## STANDARD OF REVIEW

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the court must view the

movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  Thus, if reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)).  However, a mere 'scintilla' of evidence supporting the nonmoving party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party.  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 251).

## **BACKGROUND**

In accordance with *Galvez v. Bruce,* I accept the facts in the light most favorable to Defendant.  *See Galvez v. Bruce*, 552 F.3d 1238, 1239 (11th Cir. 2008) (citing *Vinyard v. Wilson*, 311 F.3d 1340, 1343 n.1 (11th Cir. 2002)).  In *Galvez,* the Eleventh Circuit Court of Appeals held that, "All reasonable doubts about the facts should be resolved in favor of the non-movant." *Id.* (quoting *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999) (internal quotations omitted); *see also Clemons v. Dougherty County*, 684 F.2d 1365, 1368-69 (11th Cir. 1982).

The facts in this case are undisputed. Defendant Inland Construction & Equipment, Inc. renewed a hull insurance policy ("Policy") with Plaintiff Travelers Property Casualty that included the addition of the Little Debbie to the list of covered vessels. Doc. 65. The Policy contained both a "named perils clause" and an "Inchmaree Clause." Doc. 1-1. The named perils clause extended hull coverage for losses caused by "fire, lightning, earthquake, assailing thieves, jettisons, barratry of the master and mariners and all other like perils that shall come to the hurt, detriment or damage of the vessel named . . . ." *Id.*, at 3:15-17. The Inchmaree Clause further expanded coverage to also include hull coverage for loss or damage to the covered vessels for the following:

> Breakdown of motor generators or other electrical machinery and electrical connections thereto, bursting of boilers, breakage of shafts, or any **latent defect in the machinery or hull**, (excluding the cost and expense of replacing or repairing the defective part);
> . . .
> **Negligence of master, mariners, engineers or pilots**;
> Provided such loss or damage has not resulted from want of due diligence by the assured, the owners or managers of the vessel, or any of them.

*Id.*, at 3:24-26, 31-33 (emphasis added). The Policy was in effect on the date of the sinking. Doc. 66.

On April 7, 2013, in calm waters, the Little Debbie sank while moored alongside a pier in Guantanamo Bay, Cuba. Doc. 61. The sinking was caused by a hole in the hull. Doc. 76-1, at 5:19-21. Aalthough the exact cause of the hole is

unknown, both parties admit that the hole appeared to be the result of deterioration. *Id*. The hole was located in the engine room behind a portion of the vessel's structure that was welded to the hull and not easily visible. Doc. 66. After the vessel was raised, the hole was patched, and the Little Debbie was towed back to Florida without incident. Doc. 61. The Little Debbie did not have a problem with taking on water prior to the sinking and has not had a problem since the hole was repaired. Doc. 66.

Prior to embarking to Cuba, the Little Debbie was hauled out of the water and visually inspected. Doc. 65. The Little Debbie was also subject to three different surveys between November of 2011 and July of 2012, one of which was commissioned by Plaintiff. Doc. 66. All three surveys failed to discover a defect in the hull. *Id.* Additionally, while in Cuba, Defendant's employees boarded and inspected the Little Debbie daily, yet these inspections likewise never detected a defect in the hull. *Id*. Plaintiff has provided no evidence that the loss was a consequence of "want of due diligence" by the insured, the owners, or the manager of Little Debbie. Doc. 54:21-25; Doc. 1-1, at 3.

Pursuant to the Policy, Defendant submitted a claim to Plaintiff for the damage to Little Debbie. Doc. 61. Plaintiff denied insurance coverage under the Policy because the "navigational limit was an issue," and Defendant failed to demonstrate that the "vessel sank from a named peril." Doc. 61-3, at 5: 13-17.

Before Plaintiff denied insurance coverage, however, Plaintiff did not inspect the Little Debbie to determine the actual cause of the sinking. Doc. 66. Specifically, Plaintiff never ascertained whether the sinking was due to a latent defect and did not attempt to investigate the condition of the Little Debbie when she was raised. Doc. 67, at 50:17-19; 51: 7-16.

By Plaintiff's admission, its underwriting procedure includes conducting an investigation to determine the cause and extent of damage to the covered vessel and identifying a named peril. *Id.*, at 52: 1-13. If after Plaintiff's initial investigation it is unable to identify a named peril, it is then the insured's obligation to demonstrate coverage under a named peril. *Id.*, at 52:8-13. Plaintiff's coverage evaluation procedure was not followed in this case. *Id.*, at 52:14-17.

Plaintiff filed this declaratory judgment action seeking declaration that there is no coverage for the sinking of Little Debbie under the Policy based on (1) a breach of the navigational warranty contained within the policy and (2) that the Policy "excludes losses for sinking" under the named perils clause. Doc. 1-1. Plaintiff's partial motion for summary judgment seeks a declaratory judgment that it is not obligated to pay for losses sustained by Defendant when the Little Debbie sank in calm waters alongside the dock under the named perils clause. Doc. 61.

## ANALYSIS

In support of its motion for summary judgment, Plaintiff argues that it is entitled to judgment as a matter of law because "the sinking which caused the loss was not the result of a 'named peril' specifically listed by the parties for coverage under the Policy." Doc. 61.[1] Defendant responds that although the Policy does include a named perils clause, the named perils clause was expanded to provide coverage for losses and damages for causes included in the Inchmaree Clause. Doc. 65.

The Inchmaree Clause, such as the one included in this Policy, "is an expansion of coverage of considerable magnitude." *Tropical Marine Products, Inc. v. Birmingham Fire Ins. Co. of Pa.*, 247 F.2d 116, 122 (5th Cir. 1957). By voluntarily including this clause in a policy, the underwriter has expanded the named perils that will be covered to include not only latent defects, but also negligence of the masters, mariners, engineers, and pilots, as long as the loss or damage was not caused by lack of due diligence. *See* Doc. 1-1. Thus, if the hole in the hull was latent defect and "not known or discoverable by the owner or one in

---

[1] Although Plaintiff also claims that it is entitled to summary judgment because Little Debbie "was unseaworthy at the inception of the marine insurance contract, thereby voiding the Policy *ab initio* as a matter of law[,]" (Doc. 61), in Plaintiff's Reply in Support of Motion for Summary Judgment, it claims that "only ICE's failure to allege a named peril is at issue in TRAVELERS' motion for summary judgment" (Doc. 75). The allegation that Defendant breached the warranty of unseaworthiness was not pled in Plaintiff's complaint (or in any of the pleadings) and is not the subject of this declaratory action. As such, Plaintiff waived this argument. *See* Nat'l Steel Corp. v. Stephens-Adamson, 85 C 3739, 1989 WL 58251 (N.D. Ill. May 31, 1989). Because Plaintiff has subsequently clarified that only Defendant's failure to allege a named peril is at issue in its motion, I will not address the second argument of unseaworthiness. *See* Doc. 75.

privy with him[,]" the loss is covered under the Policy. *Id.* at 120-21. Nevertheless, if the hole could have been discovered, but the insured negligently failed to discover and fix it, then under the Inchmaree Clause the loss is still covered. *Id.* at 122.

Instead of investigating the cause of the sinking, after Defendant notified Plaintiff that the Little Debbie sank while docked at a U.S. Navy Base in Guantanamo Bay, Cuba, Plaintiff denied coverage based upon a breach of the navigational limits because the Little Debbie "sank while outside the policy's navigational limits[.]" Doc. 67, at 56.  Plaintiff additionally reserved its right "to decline coverage based upon other policy terms and/or legal principles that may apply." *Id*.  For instance, Plaintiff declined coverage for Defendant's failure to demonstrate that the sinking was a result of a named peril identified in "lines **15 to 33** of the policy." *Id.* (emphasis added).  Plaintiff's own denial letter and Policy recognize coverage for loss caused by "latent defect[s] in the machinery or hull," and "negligence of masters, mariners, engineers or pilots[.]" *Id*.  The sinking of the Little Debbie was a consequence, not the cause.

The Policy issued to Defendant includes both a named perils clause and an Inchmaree Clause.  Doc. 1-1.  Plaintiff has provided no evidence that the loss was not a consequence of negligence, and instead was a consequence of "want of due diligence" by the insured, the owners or the manager of Little Debbie.   Doc.

54:21-25; Doc. 1-1, at 3.  Whether the hole in the hull was a consequence of a latent defect, which Plaintiff contends it was not (Doc. 75), or whether the hole was a consequence of Defendant's negligent failure to discovery and fix the deterioration, the loss is covered under the Policy.  *See Tropical*, 247 F.2d at 122.

In Defendant's memorandum in opposition, Defendant moves this court to grant it summary judgment pursuant to Federal Rules of Civil Procedure 56(f)(1).  Doc. 65.  Rule 56 allows summary judgment for a nonmovant after the movant has been given notice and a reasonable time to respond.  FED. R. CIV. P. 56(f)(1).  Plaintiff responded to Defendant's memorandum, arguing that Defendant has the burden to plead and prove a named peril.  Doc. 75.  Although Plaintiff agrees that the holes in the hull which caused the sinking were a consequence of rust and gradual deterioration and that this defect was discoverable, the Parties disagree whether Defendant's negligence (a named peril under the Inchmaree Clause of the Policy) or Defendant's "want of due diligence" (an exemption under the Inchmaree Clause of the Policy) was the proximate cause of the defect.  *Id*.

## CONCLUSION

Accordingly, the relief requested in Plaintiff's partial Motion for Summary Judgment and Supporting Memorandum of Law (Doc. 61) is **DENIED**, and the relief requested in Inland Construction & Engineering, Inc.'s Memorandum in Opposition (Doc. 65) is **DENIED**.

**ORDERED** on July 1, 2014.

/S/ Richard Smoak
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**